IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PAUL W. BUSER, III,

    Plaintiff,

vs.                                Case No. 10-1166-JTM

BRIAN HALL, IN HIS OFFICIAL AND
INDIVIDUAL
CAPACITY AS A POLICE OFFICER FOR THE CITY
OF NEWTON, KANSAS; THE CITY OF NEWTON,
KANSAS, A KANSAS MUNICIPALITY;

    Defendants.

MEMORANDUM AND ORDER

Responding to a call reporting a fight, Newton, Kansas police officers were told by one of the participants that plaintiff Paul Buser had wrongfully touched a five-year-old girl residing at the house. Buser was subsequently arrested and charged with wrongful sexual contact. Those charges were subsequently dismissed and Buser instituted the present action, alleging claims under both 42 U.S.C. § 1983 and Kansas state law, against the City of Newton and its child sex investigator, Detective Brian Hall. The defendants have moved to dismiss these claims on the basis of qualified immunity and other grounds. For the reasons stated herein, the defendant's motion is granted in part and denied in part.

The court may dismiss a claim for failure to state a claim when the factual allegations either fail to "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). While the plaintiff need not supply detailed factual allegations, the complaint must move beyond labels and conclusions or a formulaic recitation of the elements of a cause of action. *Bell Atlantic*, 550 U.S. at 555. Speculation is insufficient, but the court accepts the facts alleged in the complaint as true, even if doubtful in fact, *id.* at 555-56, and will extend all reasonable inferences favor of the plaintiff, *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir.2006).

*42 U.S.C. § 1983*

*A. Hall's Interrogation of Buser*

The parties do not dispute the general rules regarding liability for malicious prosecution under 42 U.S.C. § 1983, and for qualified immunity as a defense to such claims. The plaintiff bears the burden to show both that he was subjected to a constitutional deprivation, and that the right was clearly established. *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000). "The contours of the right must be sufficiently clear that an objectively reasonable officer would understand that what she is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639-640 (1987).

The defendants argue that qualified immunity is appropriate, first, as to the claim advanced by Buser that his rights were violated during Hall's questioning of him shortly after the initial incident. According to the Complaint, Detective Hall sought to mislead him during the questioning by stating (falsely) that police had received a positive medical indication that the girl had been

2

molested. The defendants argue that the use of such a ruse is not a violation of Buser's constitutional rights.

In contrast, Buser argues that it is "astounding" that the defendants refer to Hall's interrogation as merely "misleading" in nature, "rather than what it is fabricated evidence and lying." (Dkt. 12, at 16). He further cites to cases generally holding that involuntary confessions are unconstitutional, such as *Miranda v. Arizona*, 384 U.S. 436 (1966). However, the court finds that Buser's argument fails to distinguish between what police tell an accused, which may or not be correct, and what they tell the court, which is evidence.

Buser's reliance on *Lowery v. County of Riley*, 522 F.3d 1086 (10th Cir. 2008) and *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004) is misplaced, because in those cases the allegedly coerced confessions were presented at trial and used to secure convictions. Similarly, in *Wilkins v. DeReyes*, 528 F.3d 790, 796-97 (10th Cir. 2008), there was evidence that police threatened the families of two young defendants, and the coerced statements were used at trial. As in *Lowery*, the Tenth Circuit held unreviewable the district court's decision that factual questions existed as to the existence of coercion. 528 F.3d at 800 ("The issues Plaintiffs present with regard to the allegedly coerced statements are sufficiently fact-oriented – requiring an analysis of the meaning and purpose of the officers' statements to Nieto and Popeleski – to prevent us from exercising jurisdiction over the district court's sufficiency of evidence determination on interlocutory appeal").

The present case is therefore distinguishable not merely because the level of coercion employed is not as great as that alleged in *Lower*, *Pierce*, and *Wilkins*, but because the questionable police tactics in those cases were both successful (in that they generated incriminating statements by the accused) and prejudicial (in that those statements were then actually used as evidence against

the accused at a criminal proceeding). In the present case, by contrast, Buser called Hall's bluff. Told that the police had positive physical evidence of the molestation, Buser remained firm in denying any responsibility. As the Complaint itself states –

> Defendant Hall later admitted in a court hearing in the Harvey County District Court that what he said to Plaintiff Buser was an "absolute lie" which he made up in an attempt to coerce a confession from Plaintiff Buser. Defendant Hall's efforts to lie to Plaintiff Buser to get him to confess did not work. Instead, Plaintiff Buser stated he was innocent and told Defendant Hall that he was not that kind of person and would not do this to a child.
>
> ....
>
> Both Defendant Hall and Det. Douglass later admitted in testimony at a later court hearing in the Harvey County District Court that Defendant Hall was trying to get Plaintiff Buser to confess but that Plaintiff Buser never confessed during either interrogation. They both admitted that they thought they might get Plaintiff Buser to confess but that they were never able to do so.

¶ 18, 21

Plaintiff has failed to show that it was clearly established that any police attempt to exaggerate the strength of the case against an accused is unconstitutional. In fact, precisely the contrary is true: "It is well-settled that a confession is not considered coerced merely because the police misrepresented to a suspect the strength of the evidence against him." *Clanton v. Cooper*, 129 F.3d 1147, 1158 (10th Cir. 1997). Buser's reliance on cases involving the submission of false evidence to a court is misplaced, and dismissal is warranted as to the pre-arrest interrogation of the plaintiff.

***B. False Affidavit***

Defendants next seek dismissal of Buser's claims to the extent that the prosecution relied on an affidavit supposedly issued by Detective Hall, indicating that there was substantial evidence to

4

support the prosecution, and which omitted the statements of other witnesses denying the charge.[1] The defendants argue that, as the affidavit was not created until after Buser was arrested, it would have played no role in the subsequent decision to prosecute him. Distinguishing cases cited by Buser, defendants state that they are not contending the decision to prosecute immunizes the police from supplying misinformation, but that the alleged misinformation (here, the affidavit) played no *causal* role in the alleged constitutional deprivation: "when the prosecutor continues the prosecution after he knows of the alleged misinformation, he clearly did not and is not relying on the misinformation," because "in the absence of the alleged misinformation, probable cause existed or at least the prosecutor thought so and the deletion of the misinformation would not have changed the outcome." (Dkt. 14, at 4).

The court finds that dismissal at the present time is unwarranted. As the cited authorities make clear, the decision of whether erroneous police information played a causal role in a mistaken prosecution is a fact intensive question. Thus, in *Thomas v. City of Snyder*, No. 95-6252, 1996 WL 662453 (10th Cir. Nov. 15, 1996), the court wrote that even if an officer arrests a suspect without probable cause, "the chain of causation will *usually* be broken by a subsequent assessment of probable cause through an indictment or a preliminary hearing." (Internal quotations omitted, emphasis added). But exceptions exist:

> a police officer who "purposefully conceal[s] and misrepresent[s] material facts to the district attorney which may have influenced his decision to prosecute" is not insulated by the prosecutor's actions in initiating or continuing the prosecution as an

---

[1] The plaintiff contends that this affidavit was "prepared, or caused to be prepared" by Hall. (Dkt. 12, at 5). The defendants acknowledge that the plaintiff's allegations are controlling for purposes of the Motion to Dismiss, but argue that Hall played no role in the creation of the affidavit, which they contend was in fact created by the prosecutor.

intervening break in the chain of causation. *Robinson v. Maruffi*, 895 F.2d 649, 655 (10th Cir.1990). The prosecutor's actions under such circumstances are not independent from, but rather dependent on, the police officer's wrongful conduct. *Id.* at 656; *see also Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir.1988) ("[A] prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial – none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision.").

1996 WL 662453 at *4.

In the *Chicago* case cited in *Thomas*, the court acknowledged as "true, as a matter of elementary principles of legal causation ... that if [defendant] would have been prosecuted even if the defendants had behaved properly, then they did not cause his injury and are not liable." *Jones v. City of Chicago*, 856 F.2d at 993. However, the court noted the existence of persuasive evidence that the police investigation had generated a manifestly unreliable identification of the defendant, that several exonerating internal police reports were buried and threats of physical violence made against the officer who made those reports, and that exonerating lab reports were concealed. Based on these extreme facts, the court wrote that a reasonable prosecutor would have never instituted charges. Thus, the court held,

> the jury could find that the defendants systematically concealed from the prosecutors, and misrepresented to them, facts highly material to – that is, facts likely to influence – the decision whether to prosecute Jones and whether (that decision having been made) to continue prosecuting him right up to and into the trial. If the prosecutors had known of Laverty's evidence, they would almost certainly have dropped the charges against Jones before trial. Indeed, he might never have been charged in the first place if the prosecutors had known the facts militating against Jones's guilt, including the fact that Purvy's description did not fit him and that Purvy initially had failed to identify him as the assailant. The jury was entitled to find that had it not been for the misconduct of the defendants, Jones would neither have been arrested nor charged. *Cf. Dellums v. Powell*, 566 F.2d 167, 192-93 (D.C.Cir.1977).
>
> In constitutional-tort cases as in other cases, "a man [is] responsible for the natural consequences of his actions." *Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961). This principle led the Supreme Court in *Malley v.*

> *Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), to hold that the issuance of an arrest warrant will not shield the police officer who applied for the warrant from liability for false arrest if "a reasonably well-trained officer in [his] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Id*. at 345, 106 S.Ct. at 1098 (footnote omitted). The Court was speaking of immunity but its discussion is equally relevant to causation, as indeed is implied in a footnote to the Court's opinion. *See id.* at 344 n. 7, 106 S.Ct. at 1098 n. 7. By parallel reasoning, a prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial – none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision.

*Id.* at 993-94 (additional citations omitted).

As noted earlier, the general rule is that a subsequent prosecution will be held to attenuate, for purposes of a subsequent malicious prosecution claim, the causal role of initial police reports. But such a general rule may be rebutted by evidence showing that probable cause was so lacking that a reasonable prosecutor would either have dropped the case or never instituted it.

However, at the present time, too many questions exist as to the provenance of the affidavit and its potential role in furthering the prosecution of Buser to support dismissal. This is not to say that, following additional discovery, the issue cannot be resolved by pretrial motion. In *Jones v. City of Chicago*, there was strong evidence indicating that, had the prosecutor known all of the facts, the prosecution would never have begun or would have been immediately abandoned. This is a high standard.

In contrast, in *Thomas*, the court found that the district court had properly granted summary judgment in favor of the defendants. Notwithstanding the plaintiff's challenges to certain facts in the police report, the court wrote,

> the prosecutor's letter to plaintiff's counsel in the criminal case summarizing the anticipated witness testimony generally corroborates [Officer] Roe's version of events. Because nothing in the record suggests that these corroborating witness summaries were not a product of the prosecutor's independent investigation, the

7

record does not present a triable issue of fact as to whether Roe purposely provided false or misleading information to the prosecutor.

1996 WL 662453 at *4.

Given the current preliminary nature of the case and the many questions surrounding the putative "Hall affidavit" the court finds that dismissal is not justified.

*C. Withholding Evidence*

Finally, with respect to the 42 U.S.C. § 1983 malicious prosecution claim, defendants argue that such claim cannot be premised on Buser's allegations that subsequent exculpatory information was not forwarded by the Newton police in a timely fashion. That is, they argue that the subsequent fair trial accorded Buser precludes any claim for failing to provide exculpatory evidence. The plaintiff argues that the obligation to provide exculpatory evidence applies even though the matter proceeded towards trial after the initial charge, and cites cases in which Fourth Amendment claims of illegal arrest were allowed to proceed where the defendant faced pre-trial detention.

The court finds, under controlling precedent, that dismissal is justified. The Fourth Amendment seizure cases plaintiff cites are inapplicable. As the Tenth Circuit recognized in *Becker v. Kroll*, 494 F.3d 904, 924 (10th Cir. 2007), the claim of "suppressing exculpatory evidence" implicates the due process "right to access exculpatory evidence" recognized in *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). But the court stressed that this right was a right to a fair trial, and was not implicated when criminal charges are dismissed prior to trial.

As the court observed, because

> Becker never proceeded to trial, and she cannot therefore rest her § 1983 claims on a *Brady* violation. *See Brady*, 373 U.S. at 86-88, 83 S.Ct. 1194 (framing the right to exculpatory evidence only in terms of providing a fair trial); see also *Jean v. Collins*,

8

221 F.3d 656, 663 (4th Cir.2000) (*en banc*) ("A *Brady* violation that resulted in the overturning of the § 1983 plaintiff's conviction is a necessary, but not a sufficient, condition for § 1983 liability on the part of the police. It is a necessary condition because the *Brady* violation establishes the requisite threshold of constitutional injury (a conviction resulting in loss of liberty) below which no § 1983 action can lie."). We have held that, to establish a *Brady* violation, the defendant must prove "(1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense." *United States v. Geames*, 427 F.3d 1333, 1337 (10th Cir.2005). A plaintiff cannot establish materiality unless the case goes to trial and the suppression of exculpatory evidence affects the outcome. *See United States v. Bagley*, 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) ("[A] constitutional error occurs ... only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial."). Thus, Becker suffered no due process violation based on *Brady* and the suppression of evidence. *See id.* ("[S]uppression of evidence amounts to a constitutional violation only if it deprives the defendant of a fair trial."); *Taylor v. Waters*, 81 F.3d 429, 436 n. 5 (4th Cir.1996) (allowing no § 1983 claim based on withholding exculpatory evidence where plaintiff did not go to trial

In response, Buser cites several cases as supporting the proposition that § 1983 malicious prosecution claims may be supported on the basis of pre-trial detention. But in the cited decisions the plaintiffs merely advanced the argument (which the Tenth Circuit ultimately rejected on the respective merits of the cases) that malicious prosecution claims may arise where police obtain an arrest based on false evidence. *See Wolford v. Lasater*, 78 F.3d 484, 487 (10th Cir. 1996) (rejecting malicious prosecution claim of plaintiff where arrest warranted contained other, valid evidence supporting finding of probable cause); *Taylor v. Mecham*, 82 F.3d 1556 (10th Cir. 1996) (same). The Fourth Amendment cases are not inconsistent with *Becker*, which held explicitly that the duty to supply subsequent exculpatory evidence is to be measured under the Fourteenth Amendment's fair trial guarantee, and such a claim fails if the matter is dismissed prior to trial.

Buser here has produced no authority showing the existence of a post-arrest duty on the part of the police to provide exculpatory evidence measured by anything other than the substantive due process fair trial guarantee recognized in *Becker*. Accordingly, *Becker* controls and the court hereby

9

dismisses Count 1 to the extent that it is premised on the alleged failure to supply him with exculpatory evidence after the criminal charge commenced.

*City Liability*

Both parties agree that the City's liability is contingent upon its police officers. The City argues that it is entitled to dismissal of the claim against it once the court awards summary judgment on the Count 1 claim against Hall. (Dkt. 11, at 6-7). Buser argues that dismissal is not justified, since Hall is not qualifiedly immune as to the claims in Count 1. (Dkt. 12, at 34-35).

As the court finds that Detective Hall is qualifiedly immune except as to role that the allegedly false affidavit may have helped to cause the continuance of the prosecution, the court accordingly finds that the Count 2 claim against the City is dismissed to the same extent.

*Statute of Limitations*

Defendants argue that Counts 3 and 4, for false arrest and malicious prosecution, are barred by the statute of limitations. Specifically, they argue that these state claims are governed by the one year statute of limitations of K.S.A. 60-514. *See Brown v. State*, 261 Kan. 6, Syl 1 and 3 (1996). Buser cites several federal decisions, including *Hamilton v. City of Overland Park*, 730 F.2d 613 (10th Cir. 1984), and *Robinson v. Maruffi,* 895 F.2d 649, 655 (10th Cir. 1990).

The decisions cited by Buser only address the issue of the appropriate statute of limitations for comparable federal actions under § 1983. No state law claims were advanced in *Robinson*, and in *Hamilton* the court addressed only the timeliness of actions under 42 U.S.C. § 1983. Nothing in either case supports the conclusion that the existence of ongoing federal claims somehow extends

the timeliness of pendent state claims. These remain subject to K.S.A. 60-514, and are accordingly time-barred.

*K.S.A. 12-105b*

K.S.A. 12-105b requires that, prior to bringing suit against Kansas municipalities, a plaintiff must serve notice of any proposed claims. The purpose of the statute is to provide cities with a means of remediating grievances prior to litigation.

Defendants argue that Buser's state law claims, Counts 3-6, should be dismissed for failure to comply with K.S.A. 12-105b. Specifically, the defendants acknowledge that Buser sent such notice, but that the amount claimed in the present action is different from the amount originally sought, noting the Kansas Court of Appeals' decision in *Zeferjohn v. Shawnee County Sheriff's Dept.*, 26 Kan. App.2d 379, 988 P.2d 263 (1999), holding that substantial compliance did not exist where the subsequent civil complaint sought damages greatly in excess of those in the original notice.

Buser argues that he substantially complied with the obligations of the statute, *see Tank v. Chronister*, 941 F.Supp. 969, 975 (D. Kan. 1996), and that in any event the remedy should be an amendment to reduce the amount of damages claimed. He argues that *Zeferfjohn* was decided on the basis of other flaws in the notice, and that the conclusion regarding the change in amount demanded was merely "an afterthought." (Dkt. 12, at 37).

In *Zeferjohn*, the court held:

> The failure to specify the same amount of damages as filed in his claim and the failure to conform his petition to the matters set forth in the claim is an additional reason why the claim did not substantially comply with the statute. K.S.A. 1998 Supp. 12-105b(d)(5) requires "a statement of the amount of monetary damages that

is being requested." Plaintiff varied that statement from the claim to the petition and it renders his notice insufficient, and we hold it did not substantially comply with the provisions of the statute.

26 Kan. App. 2d at 383.

The defendants note that in *Karlin v. City of Beloit*, 2008 U.S. Dist. LEXIS 83407 (D. Kan. 2008) the plaintiff sought $50,000 in damages in his Complaint, a "dramatically different" amount from the $10,000 sought in his 12-105b demand. Judge Lungstrum held that the notice was defective.

In *Dodge City Implement v. Barber County*, 288 Kan. 619, 642, 205 P.3d 1265 (2009), the Kansas Supreme Court agreed that "substantial compliance" satisfied the requirements of the notice statute, but upheld the dismissal of a claim where the notice frustrated the purpose underlying the statute:

> Although we may not agree with a mechanical counting of categories approach to determining substantial compliance with K.S.A. 12-105b(d), we have no hesitation in affirming the Court of Appeals and the district court on this issue. The notice provided to the County and the Township here did not substantially comply with the requirements of K.S.A. 12-105b(d). In essence, the letters identified an incorrect claimant; they did not identify the ultimate plaintiffs in the suit, give their addresses, or set forth the name or address of their counsel. They also did not put the County or the Township on notice of the extent of the damages sought on the negligence or negligence per se claims.
>
> We regard these failures as more than merely technical; they posed serious obstacles to the County's and the Township's full investigation and understanding of the merits of the claims advanced. Without such investigation and understanding, the legislature's obvious desire to facilitate early and easy resolution of claims against municipalities is undermined.

The defect in the present case is restricted to the amount of damages sought. The court has no hesitation in holding that, consistent with *Zeferjohn*, a party who otherwise complies with 12-105b but who seeks to recover a much larger sum in his Complaint, has not substantially complied

with the notice statute *to the extent amount in dispute has increased*. Such an approach undermines the purpose of the notice statute and should be rejected pursuant to *Dodge City Implement*.

The sole question before the court is whether to permit an amendment to the Complaint to bring the amount in dispute down to the level advanced in the original notice. In response to the plaintiff's proposed amendment, the defendants state only that they "will respond to a motion to amend if and when one is actually filed." (Dkt. 13, at 8).

In this context, the court notes that in *Karlin*, Judge Lungstrum denied plaintiff's request to amend the Complaint to conform to the 12-105b notice only because the court had independently determined that the state court claims were otherwise time-barred. Accordingly, the court noted amendment would be futile. As is noted elsewhere in this Order, Counts 3 and 4 here are time-barred under state law, and Count 6 is subject to dismissal for failure to state a claim. The court finds that leave to amend these claims is futile and will not be permitted.

The court hereby allows plaintiff 30 days from the date of this Order to show good cause for the amendment of Count 5 by altering the amount claimed. Defendants shall have 30 days from such motion to respond.

*Count 6*

Finally, the court grants summary judgment as to Count 6 of the Complaint, which advances a claim for abuse of process. In contrast to malicious prosecution, which is the initiation, continuation or procurement of a prosecution with malice and without probable cause, abuse of process is an improper act in the regular prosecution of a proceeding out of an ulterior motive. *See Lindenman v. Umscheid*, 255 Kan. 610, 875 P.2d 946 (1994).

In this case, plaintiff's Complaint nowhere sets out what this hypothetical ulterior motive is. In fact, the Complaint suggests there was not such additional, ulterior motive, since, as defendants point out, the Complaint merely repeats verbatim the allegations with respect to the malicious prosecution, even down to reusing, out of sequence, the original paragraph numbers.

In his Response, Buser asks for discovery since he "should be allowed to find out what was going on in defendant Hall's mind," (Dkt. 12, at 41), but makes no allegation that such ulterior motive does in fact exist. The Response does nothing to contravene the text of the Complaint itself, with its allegation that the original prosecution should not have occurred at all, not that it was properly begun but then went awry for other reasons.

In sum, the court grants the defendants' motion as to Count 1, to the extent that these claims seek recovery based upon Detective Hall's interrogation of Buser, or upon the alleged failure of the defendants to provide exculpatory evidence subsequent to the arrest, and further grants summary judgment as to Counts 3 and 4, finding that these claims are untimely, and Count 6 as failing to state a claim. The court denies the motion to dismiss as to the allegedly false affidavit, but notes that summary judgment may be appropriate as further information arises concerning the authorship of the affidavit, and its role, if any, in the prosecutor's decision to maintain prosecution of Buser. The court denies defendants' motion to dismiss as to Count 5, contingent upon an amendment conforming the amount claimed to his original K.S.A. 12-105b notice to the City.

IT IS ACCORDINGLY ORDERED this day of 23rd August, 2010 that the defendants' Motion to Dismiss (Dkt. 10) is granted in part and denied in part as provided herein.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE