IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PAUL W. BUSER, III,

        Plaintiff,

vs.   Case No. 10-1166-JTM

BRIAN HALL, IN HIS OFFICIAL AND
INDIVIDUAL
CAPACITY AS A POLICE OFFICER FOR THE CITY
OF NEWTON, KANSAS; THE CITY OF NEWTON,
KANSAS, A KANSAS MUNICIPALITY;

        Defendants.

MEMORANDUM AND ORDER

This is an action by Paul W. "Trey" Buser alleging defendant Newton, Kansas Police Detective Brian Hall suppressed evidence in connection with his 2008 arrest and imprisonment on sexual molestation charges. The state District Court determined at a Preliminary Hearing that there was probable cause to believe that Buser had sexually abused his girl-friend's five-year-old niece, T.H., but the action was later dismissed by the County Attorney. The court has previously granted in part and denied in part defendants' Motion to Dismiss, although in doing so the court noted that as to the plaintiff's claim of a false warrant in support of the arrest "summary judgment may be appropriate as further information arises." (Dkt. 15, at 14). The matter is now before the court on the Motion for Summary Judgment of defendants Detective Hall and the City of Newton, Kansas.

*Findings of Fact*

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

The plaintiff's Response to the Motion for Summary Judgment fails to comply with the local rule governing such pleadings. In responding to the uncontroverted facts

submitted by the defendants, plaintiff frequently admits or denies these facts and adds additional alleged facts. (Dkt. 24, at 7-12). In most cases (¶¶ 2, 3, 5, 8, 10, 11, 14-20, 23-24, 27-29, 31, 34), plaintiff fails to supply any particularized reference to the evidentiary record. In addition, many of plaintiff's Supplemental Facts (¶¶ 39, 41, 43, and 48) also lack any citation to any supporting evidence. Even where Buser's Response includes a factual reference to the record, it is frequently inadequate to support the factual allegations. For example, plaintiff's Additional Fact ¶ 37 contains a five sentence narrative of alleged prior events, based upon plaintiff's interpretation of Officer Powell's written report. But the only portion of the paragraph supported by any citation to the record is the last sentence, establishing the date the file was produced to the attorney representing Buser in the criminal case. (Plf. Exh. 1, ¶ 5). Consistent with D.Kan.R. 56, these unsupported allegations provide no basis for the present opinion.

On May 19, 2008, Newton police officers were called to a residence where Buser was visiting. The mother of the five-year-old girl T.H. told officers that the plaintiff had sexually molested her daughter. An officer interviewed the child, and the officers recommended that the mother take the girl to the hospital for an examination. Buser, who admitted to being intoxicated, was arrested for disorderly conduct.

Hall was assigned to investigate the allegation. He has received training in investigating such claims, including specific training on the manner and method of interviewing young children suspected of having been victims of inappropriate touching.

Hall interviewed the five-year-old on May 28, 2008. The child stated that Buser had inappropriately touched her.

In his Response, Buser complains that Hall conducted a flawed interview, because he "never even attempted to determine whether the little girl was capable of telling the truth." (Dkt. 24, at 8). But this simply repeats a question posed to Hall by Buser's criminal attorney during the preliminary hearing. (Dkt. 22-3, at 5-6). The Response fails to note that

Hall did not agree with the question, but directly responded that his training does not require such independent discussion of truthfulness, because a child of the victim's age "developmentally has the ability to know the difference between the truth and not telling the truth." (*Id*.). The plaintiff has submitted no evidence showing either that officers receiving such training are not so taught, or that the teaching is contrary to accepted science.

Hall arrested Buser later that day. After the arrest, the County Attorney's office prepared a probable cause affidavit which was submitted to the court. The County Attorney determined what information from the various police reports would be included and what information would be omitted from the affidavit. Hall did not prepare the affidavit, did not decide what would be included in or omitted from it, and did not submit it to the court.

The court conducted a preliminary hearing on June 13, 2008, and the court found that there was sufficient evidence to warrant a trial. (Dkt. 22-3, at 47-49). The investigative report was given to Buser's defense attorney on July 8, 2008. The court conducted a subsequent hearing on July 11, 2008. The County Attorney dismissed the criminal prosecution of the Buser on August 22, 2008.

The original Complaint in this action was first filed on May 25, 2010. The Amended Complaint was filed on October 25, 2010.

Buser contends that the affidavit was misleading because "it was falsely stated that six witnesses had provided information that Buser had molested the minor child," it "stated that Buser had 'Confessed,'" and it did not include the fact that, during the hospital examination, T.H. told the nurse nothing had happened and that the exam turned up no medical evidence of molestation. (Dkt. 19, ¶¶ 40-42). Buser also alleges that at the Preliminary Hearing, Hall falsely testified that Buser had "confessed." (Id. at ¶ 26)., 2008.

At the preliminary hearing, Hall testified Buser said he did not remember touching the girl but also did not remember not touching her, that he had consumed a lot of alcohol and had blacked out. Buser also said that he did not want to call the five-year-old girl a liar. At one point, Buser said "Okay I did it," but Hall testified he felt this was "just conceding," and Hall told Buser he wanted to know the truth and that Buser should not just make a statement, to which Buser responded by saying he did not do it. At other times in the conversation, Buser said he did not do it and would not do something like that.

At the later, July 11 hearing, Hall testified that Buser

> made statements like Well I don't want to call [T.H.] a liar. Then he made statements that if she said I did it, I did it, and then finally he made a statement, Yes, I did it, and I told him — I told him several times I don't want you to tell me what you think I want to hear. I want to know the truth.

(July Tr. at 17). Hall also testified at the July hearing that, when asked point blank if he had inappropriately touched the girl, Buser gave differing responses:

> I got different responses. On one occasion he said yes, I did it. Later occasions he said — on another occasion he said, Well, if she said I did it, then I did it. And then on other occasions he said, I don't remember doing it. You know he wishes he could remember if he did it... He said he couldn't remember doing it or not doing it.

(July Tr. at 18-19).

Buser also testified at the hearing on July hearing, stating that when he was arrested, he told the officers that he was really drunk that night, had blackouts and really did not remember what he did. Buser also testified that he had told Hall that he didn't think T.H. was lying and that "if she said I did, I did." (July Tr. at 63, 67).

Q. At any point did you — when you were in the car say in fact I did this?

A. When he — he initially said this question is the big one. This is where it's basically going to be basically, and I was like a long pause. It may have been a couple of minutes, and I said, Yeah sure, if that's what you want to hear and he said, No, I don't want you to tell me want I want to hear. I want the truth.

(Id. at 63-64).

Konnie Wheeler, the nurse who conducted the examination, testified that she found no trauma or no injury to the girl's genitalia. She testified that this exam was for purposes of examination for trauma, and was not a detailed forensic examination. She testified that the lack of trauma did not mean there was no assault.

During the examination, Wheeler asked if she knew why she was there, and T.H. responded: "I don't want to tell you about Trey." Wheeler asked if Buser had done anything that made her mad or sad, and T.H. responded: "I don't want him in my room." (June Tr. at 25). T.H. also told Wheeler that Buser had been kissing her on her face and head. Wheeler asked the little girl if she had anything that hurt her or had any ouchies, the little girl said "no."

At the preliminary hearing, Jennifer Hunter, Buser's fiancé and the child's aunt, testified she was present when one of the officers interviewed T.H.. According to Hunter, she had found Buser in the room where T.H. sleeps with another child. T.H.'s mother, Jodi, entered the room and began to accuse Buser of molesting her child. Hunter testified that she was present when the police arrived, and was in the room when one of the officers spoke to T.H.. When she was asked about that interview, Hunter stated:

> A. I asked [T.H.] what happened when Trey came in the room and she said, Trey was fixing my diaper.
>
> Q. Did she say anything else?
>
> A. And then I said, And then what happened? And she said, He pulled too hard on one side and broke it.
>
> Q. Okay. Did she say anything else?
>
> A. And then the officer asked, Did Trey touch your pee-pee? And she said no, so -- and then he asked, Did Trey kiss you? And she said no. He asked, Has Trey ever kissed you? And she said, Yes, on the cheek and the forehead.
>
> Q. Okay. Did the officer ask [T.H.] anything else?

6

> A. No. The officer then looked at me and said, I see no evidence of anything done wrong here, so we just left the room and he went out to talk to Jodi, and I was standing there when he was talking to Jodi. He told her that take her daughter to the hospital and get her checked out.

(Prelim. Hrg. Tr., Dkt. 22-3, at 35-36).

*Conclusions of law*

In their Motion for Summary Judgment, the defendants argue that Buser's remaining claims cannot stand because the facts demonstrate that Hall did not participate in the creation of the probable cause affidavit. Instead, the facts establish that the probable cause affidavit was prepared by the County Attorney's office, and that Hall simply forwarded the results of his interviews with Buser and T.H. to his lieutenant, who then forwarded them to the County Attorney. As he was not personally responsible for the affidavit, they argue, Hall cannot be held liable for information what was included, or excluded, from the probable cause affidavit. *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006). In addition, they argue that even if the affidavit were modified in the manner Buser suggests, it would still establish probable cause for his arrest. With respect to Hall's testimony at the preliminary hearing, the defendants contend that the testimony is protected by both absolute and qualified immunity. The defendants argue that the claims against the City are contingent upon the viability of the claims against Hall, and accordingly should be dismissed as well. Finally, they contend that Buser's malicious prosecution claim advanced in his Amended Complaint is time-barred.

In his response, Buser primarily argues that the Motion for Summary Judgment is premature, and seeks to conduct discovery through depositions of Newton police officers and the County Attorney. (Dkt. 24, at 16). Buser argues that "[t]here are many unanswered questions" as to who actually prepared the affidavit, and the content of conversations Hall may have had with the author. (Id. at 17).

Buser argues that the probable cause affidavit was false because it failed to include references to T.H.'s statements at the scene and to the hospital nurse which failed to confirm the claim of molestation. In addition, he argues that Hall misstated the results of his interview in stating that Buser had "confessed" to the charges, when in fact his agreement to having molested T.H. was momentary and facetious. He further complains that the Newton police did not immediately forward the report of Wheeler's examination to the County Attorney's office until June 4, 2008, after the County Attorney brought the criminal complaint against him. Finally, Buser argues (*Id.*, at 39) that the malicious prosecution claim is proper, based on the court's prior ruling on the motion to dismiss.

Contrary to the plaintiff's arguments, the affidavits submitted to the court do not create any great ambiguity as to the authorship of the probable cause affidavit. Those establish that the affidavit was prepared by the County Attorney, based upon materials submitted by Hall's superior officer, and that Hall did not decide what information was forwarded or not forwarded to the County Attorney. More importantly, the issue is not controlling because the court finds that even if the affidavit were amended to reflect the additional information now cited by Buser, it would still establish the existence of probable cause. Because the omitted information was not material, the plaintiff has failed to establish a constitutional deprivation. *See Stewart v. Donges*, 915 F.2d 572 (10th Cir. 1990).

While plaintiff complains that the probable cause affidavit did not directly state that T.H. had initially disavowed the molestation when she spoke with the patrol officer and later with the Nurse Wheeler, the fact remains that this information was produced prior to the Preliminary Hearing, that Nurse Wheeler was able to testify at the Preliminary Hearing, and that Judge Anderson nonetheless determined that there was probable cause to believe that Buser had committed the charges.

When shorn of rhetoric premised on cavalier citations to broad swaths of hearing testimony, the actual information which plaintiff would have added to the charges does

8

not negate a finding of probable cause. When the patrolman asked T.H. if Buser had "touched your pee-pee," she indicated he had not. But the questioning was cursory, and the officers recommended that T.H. be taken to a hospital.

Similarly, the supposedly "suppressed" hospital examination by Nurse Wheeler fails to negate a finding of probable cause. Contrary to the argument made by plaintiff, the physical examination simply failed to demonstrate the absence of physical injuries. Wheeler expressly testified at the preliminary hearing that the examination did not demonstrate the absence of molestation. Further, Wheeler did not testify that T.H. had stated that Buser had not abused her. Rather, the statements were far more equivocal, with T.H. stating that Buser had been kissing her, and saying, "I don't want to tell you about Trey," and that "I don't want him in my room."

As noted earlier, plaintiff states that Hall's report of the interview between himself and the detective falsely stated that Buser had "'[c]onfessed'" to the charges. Plaintiff's use of quotation marks around the word suggests that the word itself appears in Hall's report of the interview. It does not. Instead, Hall's report accurately indicates that Buser at one point in the interview agreed by stating "Yes, I did it," or that he probably did it.

Most importantly, while the information cited by plaintiff is certainly important to any determination of guilt or innocence, it does not preclude a finding of probable cause given the weight of evidence otherwise showing the existence of a crime. That other evidence shows that Buser was found, highly intoxicated, in T.H.'s room at night, that T.H.'s diaper was torn, that Buser agreed when was drunk to the point that he had blacked out a time or two, that he was not sure what he had done in T.H.'s room, that he did not want to call the girl a liar, and — most importantly — T.H.'s subsequent and affirmative statement that Buser had indeed touched her "pee pee" and in doing so had hurt her. The court agrees with Judge Anderson's finding at the end of the Preliminary Hearing that the evidence as a whole establishes probable cause to believe that a crime was committed.

The court finds that defendant Hall possesses qualified and absolute immunity as to the content of his testimony at the preliminary hearing. *See*, *respectively*, *Garramone v. Romo*, 94 F.3d 1446, 1449 (10th Cir. 1996) (qualified immunity); *Mee v. Ortega*, 967 F.2d 423, 425 (10th Cir. 1992) (absolute immunity). Nor has Buser shown that Hall's testimony was, indeed, false. Again, Hall did not state that Buser "confessed." Rather, during both hearings, Hall indicated that Buser gave different responses when asked about his contact with T.H., including stating, on one occasion, "Yes, I did it." This is generally consistent with Buser's own account of the interview.

The court will dismiss Count 2, advanced against the City of Newton, in light of the present findings. As the court noted in its earlier Order, any municipal liability under Count 2 is contingent upon showing a deprivation of constitutional rights as to Count 1.

Finally, the court will grant summary judgment as to plaintiff's malicious prosecution claim. This claim was addressed in the court's prior Order, where it explicitly agreed that Buser's claims for false arrest and malicious prosecution were time-barred. (Dkt. 15, at 10-11). Even without this prior finding, summary judgment would in any event be warranted, as plaintiff's Response provides no argument at all why such a claim would not be precluded by the one-year statute of limitations of K.S.A. 60-514.

IT IS ACCORDINGLY ORDERED this 13th day of September, 2011 that the defendants' Motion for Summary Judgment (Dkt. 21) is granted.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE